# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LINDA SZOLLOSY, on behalf of herself and as parent and next friend of CHARLES DEAN SZOLLOSY,<br>　　　　Plaintiff | : : : : : | |
| 　　　　v. | : : | Civil Action No.<br>3:99 CV 870 (CFD) |
| HYATT CORPORATION, HYATT BRITANNIA CORPORATION LTD., WATERSPORTS ADMINISTRATION INC., AND RED SAIL CAYMAN LTD.,<br>　　　　Defendants/Third-Party Plaintiffs | : : : : : : | |
| 　　　　v. | : : | |
| CHARLES SZOLLOSY<br>　　　　Third-Party Defendant | : : | |

## RULING ON CHOICE OF LAW ISSUES

Plaintiff Linda Szollosy brought this action as parent and next friend of her minor son Charles "Dean" Szollosy, seeking damages for injuries suffered by Dean Szollosy during a September 1998 vacation in the Cayman Islands.[1]  Linda Szollosy's complaint contains five counts, alleging the common law torts of negligence and breach of warranty by defendants Hyatt Corporation ("Hyatt") and Hyatt Britannia Corporation Ltd. ("Hyatt Britannia"), and alleging negligence, breach of warranty, and strict products liability under Conn. Gen. Stat. § 52-572m et seq. against defendants Watersports Administration, Inc. ("WAI"), and Red Sail Cayman Ltd.

---

[1] For a fuller description of the factual background of this litigation, the Court refers readers to its recent ruling on the parties' motions for summary judgment.  See Szollosy v. Hyatt, 2005 WL 2436551 (D. Conn. Sept. 26, 2005).

1

("Red Sail").[2]  The defendants then brought a third-party action against Charles Szollosy for

contribution, common law indemnification, and apportionment, alleging that Charles Szollosy

was liable for all or part of Dean's injuries due to negligence.[3]

The parties have now submitted memoranda asking the Court to conduct a choice-of-law

analysis as to what body of law should govern Linda Szollosy's negligence, breach of warranty,

products liability, and punitive damages claims.  The plaintiff argues that Connecticut law should

govern all claims, while the defendants argue that the application of Cayman Islands law is more

appropriate to this action.

## II.    Discussion

The Court previously has evaluated the action under the criteria set forth in Sisson v.

Ruby, 497 U.S. 358 (1990), and determined that it possessed and would exercise admiralty

jurisdiction over the case.[4]  See Szollosy v. Hyatt, 208 F. Supp. 2d 205 (D. Conn. 2002) (Ruling

on Third-Party Defendant's Motion to Dismiss).  When a federal court hears a case in admiralty,

---

[2] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

[3] Charles Szollosy is the husband of Linda Szollosy and the father of Dean Szollosy.

[4] The fact that plaintiff Linda Szollosy invoked only the Court's diversity jurisdiction does not mean that the Court cannot also exercise its admiralty powers.  See, e.g., Capozziello v. Brasileiro, 443 F.2d 1155, 1157 (2d Cir. 1971) ("That the district court's diversity, rather than its admiralty, has been invoked does not change the applicable [maritime] law."); see also 29 Moore's Federal Practice § 704.01[2] (Matthew Bender 3d ed. 2001) ("It is not necessary to state specifically that the claim is an admiralty or maritime claim in order to invoke admiralty jurisdiction . . . [so long as] the allegations . . . invoke a theory cognizable in admiralty.").  See also Szollosy v. Hyatt, 208 F. Supp. 2d 205, 210-13 (D. Conn. 2002) (Ruling on Third-Party Defendant's Motion to Dismiss).

2

choice of law questions are resolved under the test established in Lauritzen v. Larsen, 345 U.S. 571 (1953).

Lauritzen, the case which established choice-of-law principles for maritime tort claims, involved a Danish sailor's injuries in the course of his employment aboard a Danish ship.  The Lauritzen Court evaluated whether United States law or Danish law should be applied to the tort, and established seven factors to be considered in resolving such questions: 1) the location of the wrongful act; 2) the law of the flag of the vessel involved; 3) the domicile of the injured party; 4) the national allegiance of the defendant shipowner; 5) the place of contract; 6) the relative accessibility of a foreign forum; and 7) the law of the forum chosen.  See Lauritzen, 345 U.S. at 583-92.[5]

As evidenced by the international flavor of the Lauritzen case, the factors "are most often applied to determine whether the admiralty law of the United States or that of a foreign state should be applied to a particular dispute."  Calhoun v. Yamaha Motor Corp., 216 F.3d 338, 346 (3d Cir. 2000).  The laws of the individual United States rarely are implicated in a Lauritzen analysis, save in purely domestic maritime torts.  See, e.g., Scott v. Eastern Air Lines, Inc., 399 F.2d 14 (3d Cir. 1968) (applying Lauritzen to determine whether Massachusetts or Pennsylvania law should govern a suit stemming from a Philadelphia-bound plane's crash into Boston Harbor).

---

[5] Lauritzen itself involved a case brought pursuant to the Jones Act, 46 U.S.C. § 688, which creates a right of action for "any seaman" suffering "personal injury in the course of his employment."  The Supreme Court, however, elaborated in Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 382 (1959), that the Lauritzen principles were "intended to guide courts in the application of maritime law generally."  Subsequent to Lauritzen and Romero, the Supreme Court established an eighth factor to be considered: the defendant shipowner's base of operations.  See Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 309 (1970).  These cases sometimes are referred to collectively as the "Lauritzen triad." When this Court discusses the Lauritzen factors or a Lauritzen analysis, it refers to the general principles of that triad of cases.

3

The choice-of-law analysis in this action, therefore, must be conducted in two stages. First, the Court must determine under <u>Lauritzen</u> which national body of law (i.e., that of the United States or the Cayman Islands) should govern the action. Second, should federal maritime law be chosen, the Court further must decide whether Connecticut law should serve as a supplementary rule of decision on any of Linda Szollosy's claims or whether Connecticut state law is pre-empted for reasons of maritime uniformity.

The <u>Lauritzen</u> test appears to support the application of federal maritime law in this case. The location of the wrongful act, the first factor to be considered, is of course the Cayman Islands. The remaining factors, however, weigh more heavily in favor of the United States. The second factor, the law of the flag of the vessel involved, is not a compelling one; this was a wave runner designed for tourist use, not a vessel registered and doing business in international waters. The third factor, the domicile of the injured party, is the United States. The fourth factor, the national allegiance of the defendant shipowner, does not favor either body of law strongly. While the owner of the wave runner was Red Sail Cayman Ltd., the defendants have sworn that Red Sail is 66% percent Cayman-owned and approximately 34% owned by entities which also own the American-based defendant Hyatt Corporation.[6]  <u>See</u> Docs. # 152, 153. Red Sail appears to have allegiances to both the Cayman Islands and the United States, and therefore would not be materially prejudiced by applying the law of either nation. The Court draws the same conclusion

---

[6] A similar conclusion applies to the "eighth" <u>Lauritzen/Rhoditis</u> factor, the defendant shipowner's base of operations, as Red Sail's ownership and operations appear to be divided between both the relevant countries. The Szollosys further allege, though the defendants/third-party plaintiffs deny, that Red Sail is a subsidiary of defendant/third-party plaintiff WAI, which is a Delaware corporation headquartered in California.

as to the other defendants in this case.[7]  The fifth factor, place of contract, generally is not

applicable here, as the parties did not contract for the use of the wave runner.[8]  Finally, the sixth

and seventh factors, the relative accessibility of the foreign forum and the law of the forum

chosen, weigh in favor of applying federal maritime law.  The Szollosys are United States

residents who would be greatly inconvenienced by litigating in the Cayman Islands, while the

defendants/third-party plaintiffs are all corporations with at least some United States contacts or

ownership, lessening the difficulty of pursuing a lawsuit here.  Additionally, Linda Szollosy filed

the original complaint in this case in federal court for the District of Connecticut; the law of this

forum for an admiralty action is federal maritime law.  Therefore, after evaluating the Lauritzen

factors as a whole, the Court will apply federal maritime law to this action.  See also Neely v.

Club Med Mgmt. Servs., 63 F.3d 166, 170-71 (3d Cir. 1995) (applying United States maritime

law to action seeking recovery for plaintiff's injuries while scuba diving in the course of her

employment at Club Med in St. Lucia, because plaintiff was American citizen, activity at issue

was not one implicating traditional maritime shipping interests, and corporate defendants had

substantial contacts with the United States).

---

[7] The other defendants in this action are Hyatt Corporation, a Delaware corporation headquartered in Illinois; WAI,  a Delaware corporation headquartered in California; and Hyatt Britannia, a corporation organized and with its principal place of business in the Cayman Islands. All the defendants, save Hyatt Britannia, have American ownership that militates for the application of federal maritime law.  Hyatt Britannia arguably also has sufficient contacts to the United States to implicate federal maritime law, as its hotel properties are advertised to United States tourists.  Notwithstanding those contacts, the Court still finds that any prejudice to Hyatt Britannia by applying federal maritime law is outweighed by the remaining Lauritzen factors counseling for such an application.

[8] Place of contract is, of course, relevant to Linda Szollosy's breach of warranty claims, as such claims are contractual in nature.  That factor will be discussed infra, when the Court specifically evaluates those claims.

Next, the Court must determine whether any Connecticut rules of decision should supplement the federal maritime law applied to this action.  "In admiralty cases, federal maritime law applies where it exists."  <u>Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse</u>, 996 F.2d 506, 513 (2d Cir. 1993) (citing <u>Pope & Talbot, Inc. v. Hawn</u>, 346 U.S. 406, 409-11 (1953)).  State law may be imported to federal admiralty actions in limited circumstances, to supply a rule of decision in areas where admiralty is silent.  Even in such situations, however, a state rule is pre-empted if its application would disrupt the "harmonious system" of uniform federal maritime law.  <u>Romero v. Int'l Terminal Operating Co.</u>, 358 U.S. 354, 373 (1959); <u>see also</u> <u>Just v. Chambers</u>, 312 U.S. 383, 388 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation.").

Although federal maritime law with respect to <u>liability</u> must be applied where it exists, the Supreme Court repeatedly has expressed that state <u>remedies</u> still may be sought in maritime tort actions.  <u>See</u> <u>Norfolk Shipbuilding & Drydock Corp. v. Garris</u>, 532 U.S. 811, 815 (2001) ("It is true . . . that we have held admiralty accommodation of state remedial statutes to be constitutionally permissible."); <u>Yamaha Motor Corp. v. Calhoun</u>, 516 U.S. 199, 202 (1996) ("Traditionally, state remedies have been applied in . . . maritime wrongful death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade.  We hold . . . that state remedies remain applicable in such cases . . . .").  Each of Linda Szollosy's claims will be examined in turn as to whether any state rules of decision or remedies are applicable.

### A.    Negligence Claims

In Count One of her complaint, Linda Szollosy alleges that defendants Hyatt and Hyatt Britannia were negligent and that they breached a duty of care to guest Dean Szollosy that resulted in Dean's injuries.  In Count Three, Linda Szollosy alleges similar negligence by defendants WAI and Red Sail.[9]

Federal maritime law incorporates common law negligence principles generally.  Becker v. Jurgens, 356 F.3d 381, 388 (2d Cir. 2004); see also Norfolk Shipbuilding, 532 U.S. at 813 ("It is well settled that the general maritime law imposes duties to avoid . . . negligence"); see generally Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959) (holding that maritime law of negligence, not New York state law, governed personal injury action in admiralty).  As the parties have made no showing that Connecticut law provides some necessary supplementary rule or remedy pertaining to common law negligence, these counts of the complaint will be governed by federal maritime law.

### B.    Breach of Warranty Claims

In Counts Two and Five, Linda Szollosy alleges that the defendants expressly or impliedly breached warranties to the Szollosys that Hyatt facilities would be safe for guests' use

---

[9] Count Three is styled as a negligence claim pursuant to the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m et seq.  The Court assumes that the plaintiff so pled this count due to the Connecticut rule that an action alleging harm from a product due to negligence must be asserted as part of a product liability scheme.  See Conn. Gen. Stat. § 52-572n(a); see also McKernan v. United Techs. Corp., 717 F. Supp. 60 (D. Conn. 1989).  Nonetheless, the same negligence analysis applies to both counts.  See East River Steamship Corp. v. Transamerica Delaval, 476 U.S. 858, 866 (1986) ("[T]o the extent that products actions are based on negligence, they are grounded in [negligence] principles already incorporated into the general maritime law.")

7

and that the wave runners at the Red Sail concession would not be defective and injurious.[10]

Breach of warranty actions do not lie within admiralty jurisdiction, as they are grounded in contractual disputes.  The Supreme Court has directed that state law governs breach-of-warranty claims contained within admiralty litigation, and specifically refers lower courts to the dictates of the Uniform Commercial Code.  See East River, 476 U.S. at 872 n.7.

The Court therefore will apply Connecticut law to the plaintiff's breach of warranty claims.  As to Count Two of the Complaint, the Court specifically finds that the contract between the parties was formed in Connecticut.  The parties do not dispute that the Szollosys made their reservations with the Hyatt through a Connecticut travel agency via a Connecticut telefax.  See Doc. #166 at 3.  Based on this record, the Court agrees with the reasoning of the Eighth Circuit Court of Appeals that any warranties made by the defendants were "received and accepted in [Connecticut] when reservations were made in [Connecticut] for accommodations in the defendants' hotel."  Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 345 n.6 (8th Cir. 1983).[11]

---

[10] Count Two of the complaint alleges common law breach of warranty by defendants Hyatt and Hyatt Britannia.  Count Five, which alleges breach of warranty by defendants Red Sail and WAI, is styled as a claim under the Connecticut Products Liability Act, presumably for the same reasons as is Count Three.  See section II.A, n.9, supra.  Regardless, Counts Two and Five are subject to the same legal analysis.

[11] Additionally, the Connecticut Supreme Court recently has expressed its approval for the mailbox rule, the prevailing tenet in contract law that "in any case where a mailed acceptance is reasonable . . . [a] contract is regarded as made at the time and place that the letter of acceptance is put into the possession of the postal service."  Echavarria v. Nat'l Grange Mut. Ins. Co., 275 Conn. 408, 417 n.10, 880 A.2d 882 (2005)  A fax now is considered an adequate "writing" for contract formation under the Uniform Commercial Code.  See Bazak Int'l Corp. v. Tarrant Apparel Grp., 378 F. Supp. 2d 377, 383 (S.D.N.Y. 2005).  Analogizing the mailbox rule to newer electronic forms of communication, the Court finds that the Szollosys also may be considered to have formed a contract at the moment their reservation form was faxed to the travel agency and then to the Hyatt Regency.  Under whatever reasoning, Connecticut warranty law will govern these counts.

8

### C.       Products Liability Claim and Punitive Damages

Linda Szollosy alleges strict products liability against defendants Red Sail and WAI in

Count Four of her complaint.  The Supreme Court recognized "products liability, including strict

liability, as part of the general maritime law" in its East River decision.  East River, 476 U.S. at

865.[12]  Maritime law evaluates strict products liability as the doctrine is delineated in § 402(A) of

the Restatement (Second) of Torts.  Id; see also Saratoga Fishing Co. v. J.M. Martinac & Co.,

520 U.S. 875, 879 (1997) (discussing the Restatement as the basis for the Court's East River

ruling); Kaiser Aluminum & Chem. Corp. v. Westinghouse Elec. Corp., 981 F.2d 136, 144 (4th

Cir. 1992) (discussing the Supreme Court's adoption of the doctrine as expressed in the

Restatement); Pan Alaska Fisheries Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1134

(9th Cir.1977) (Restatement § 402A is the "best and most widely-accepted expression of the

theory of strict liability").  Therefore, the Court will apply federal maritime products liability law

to Count Four of the Complaint.

### D.     Punitive Damages

Linda Szollosy has asked for punitive damages on her products liability claims, pursuant

to Conn. Gen. Stat. § 52-240b.  As discussed previously, Szollosy has pled three counts under the

Connecticut Product Liability Act, two of which are common-law negligence and breach of

warranty claims and one of which alleges strict products liability against defendants Red Sail and

---

[12] In East River, the Supreme Court noted that products liability claims based on negligence were covered by the general maritime law of negligence and that all claims based on breach of warranty were covered by the relevant state law.  Id. at 866, 872 n.7.  Therefore, although Linda Szollosy also alleged negligence and breach of warranty claims (see Complaint, Counts Three and Five) against Red Sail and WAI under the Connecticut Product Liability Act, those claims will be governed by the law generally applicable to those claims, as discussed in Sections II.A, II.B, supra.

WAI.  The two common law claims are pled under the Product Liability Act due to the Connecticut rule that any harm from a product must be brought as part of a single product liability scheme.

Under Connecticut law, punitive damages may be awarded "if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product."  Id.  In admiralty, however, punitive damages are subject to a different standard, "where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard of the rights of others."  CEH, Inc. v. F/V Seafarer, 70 F.3d 694, 699 (1st Cir. 1995).  The Court will recognize Linda Szollosy's claim for punitive damages as to Count Four, alleging strict products liability, but in the interests of maritime uniformity will apply the federal admiralty standard for any award of punitive damages. In keeping with the general admiralty rule that federal maritime law governs liability, but state law remedies may be applied, the measure of punitive damages may not exceed twice the amount of any damages awarded to the plaintiff, in accordance with Conn. Gen. Stat. § 52-540b.

**III.     Conclusion**

The Court informs the parties that this ruling is without prejudice to reconsideration based upon the facts presented at trial and any proposed jury charges submitted.

As all choice of law issues now have been resolved, the parties are hereby ORDERED to submit their Joint Trial Memorandum by November 16, 2005.

So ordered this 20th day of October 2005 at Hartford, Connecticut.


 /s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

11